DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ESSAM ABDO,**
Appellant,

v.

**AVATAR PROPERTY AND CASUALTY INSURANCE COMPANY,** a
Florida corporation, and **DRY UP RESTORATION LLC,**
as assignee of Essam Abdo,
Appellees.

No. 4D19-2945

[September 9, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Nicholas Richard Lopane, Judge; L.T. Case Nos. CACE17-17060(03) and COCE17-4839.

Mariano Gonzalez and Leonardo G. Renaud of Law Offices of Gonzalez & Associates, P.A., Miramar, for appellant.

Elizabeth K. Russo and Paulo R. Lima of Russo Appellate Firm, P.A., Miami, and Butler Weihmuller Katz Craig LLP, Tampa, for appellee Avatar Property and Casualty Insurance Company, a Florida corporation.

GROSS, J.

This is an appeal from a final summary judgment against an insured who sued his insurance company for breach of contract. The crucial fact giving rise to the circuit court's ruling was the insured's failure to attend an examination under oath. We reverse because an issue of fact existed regarding the insured's willful noncompliance with the policy.

### *Presuit Facts*

Appellant, Essam Abdo (the "homeowner"), owns a home in Florida which is insured by appellee, Avatar Property & Casualty Insurance Company. The homeowner's policy provides that in the event of a loss giving rise to a claim, the homeowner, among other things, must give "prompt notice" to Avatar, provide Avatar with requested records and documents, and submit to an examination under oath ("EUO"). A

provision in the policy states that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within 5 years after the date of the loss."

On November 21, 2016, the homeowner discovered a plumbing leak in his kitchen, with water coming from the ceiling and running down the walls. He tracked the leak upstairs, where he discovered water on the hallway floor flowing from the master bedroom. The homeowner called a handyman, who arrived a short time later and shut off the main water valve. After a trip to Home Depot, the handyman completed the repair of a leaking pipe in the master bathroom.

The handyman recommended a public adjuster to assist the homeowner with filing an insurance claim. The adjuster arrived the same day as the leak was discovered and arranged for a company to dry out the residence and another business to test for mold.

On November 23, 2016, the homeowner's attorney from the Duboff Law Firm (the "Law Firm") sent Avatar two separate letters reporting losses on two separate dates: (1) a plumbing leak in the kitchen on November 17, 2016; and (2) a plumbing leak in the master bathroom on November 21, 2016. Avatar assigned a different claim number to each claim.

Avatar arranged with the Law Firm for an inspection of the home on November 30, 2016 by its adjuster, along with a general contractor and a plumber. By the time the adjuster arrived for the inspection, the homeowner's adjuster had already hired a company which claimed to have performed almost $17,000 in water mitigation work from November 21–28. A different company billed $3,000 to conduct mold assessment related to the two claims.

On January 26, 2017, the Law Firm sent Avatar two emails, each with a sworn proof of loss. For the bathroom claim, the proof of loss sought $75,972.54 in damages; for the kitchen claim, the proof of loss listed $29,495.46 in damages. The homeowner later withdrew the kitchen claim.

On February 2, 2017, Avatar responded to the proofs of loss with a letter to the Law Firm citing the policy's EUO provision and advising that Avatar had scheduled the homeowner's EUO for March 29, 2017. The letter also requested the homeowner to provide certain records and documents to support the claim.

On March 10, 2017, Avatar's attorney confirmed the scheduled EUO with the Law Firm.

On March 21, 2017, the Law Firm emailed Avatar's attorney advising that the firm was withdrawing as counsel of record and requesting that Avatar direct all future communications to the homeowner directly. On March 23, Avatar's attorney sent a letter directly to the homeowner reminding him of the March 29 EUO.

The homeowner did not appear for the March 29 EUO.

On May 9, 2017, Avatar's attorney sent the homeowner a letter denying his claims as "a consequence of [his] numerous, and undeniable, material breaches" of the insurance policy.

On May 17, 2017, the homeowner's new attorney faxed a letter to Avatar advising that it had been retained to represent the homeowner and requesting Avatar's "decision in this matter." Avatar's attorney responded to the letter, stating that Avatar had denied the claims in their entirety on May 9.

On July 28, 2017, the homeowner's attorney sent Avatar's attorney a letter indicating that (1) the homeowner was unaware that an EUO had been scheduled, and (2) the homeowner had been out of the country from March 24 through April 12, 2017. He concluded the letter by asking whether Avatar wished to proceed with the EUO and requested proposed dates.

On August 21, 2017, the homeowner's attorney sent a follow-up email to Avatar's attorney stating that he had not received a response to his July 28 letter and offering again to schedule an EUO. The EUO was never rescheduled.

### *The Litigation*

On September 7, 2017, the homeowner filed a lawsuit. The second amended complaint alleged breach of contract.

On April 11, 2018, Avatar filed two motions for summary judgment, one based on the insured's failure to satisfy post-loss contractual obligations and the other grounded in misrepresentation and fraud. Relevant to this appeal, Avatar's motion for summary judgment based on the failure to satisfy post-loss obligations alleged that the homeowner failed to: (1) provide prompt notice of the loss to Avatar; (2) show all of the damage to Avatar; (3) produce all records and documents requested by Avatar; and (4) submit to an EUO.

3

The homeowner filed a memorandum in opposition to Avatar's motions for summary judgment. Regarding the failure to submit to an EUO, the homeowner argued that the motion should be denied because he provided a reasonable explanation for his nonattendance at the EUO and his attorney attempted to reschedule the EUO on two occasions. The homeowner also filed his affidavit in opposition to the motions for summary judgment, which stated, in part:

- From March 24, 2017 through April 12, 2017, I was in the country of Kuwait with my wife visiting her mother who was seriously ill.
- Upon my return to the United States, having not received any decision on my claim, I retained an attorney and my attorney forwarded the letter dated May 17, 2017, to Avatar which is attached hereto as Exhibit "B."
- In response to the letter, my attorney received the letter attached hereto as Exhibit "C" which was forwarded to me. This was the first time I was made aware that my claim was denied and at no time prior to this had I been personally informed that an Examination Under Oath had been requested of me or any other party.
- In fact, I did not become aware that any examination under oath had been requested until my attorney informed me as stated in the letter sent by them to Avatar's attorneys on July 28, 2017, which is attached as Exhibit "D."
- I was always willing and able to attend my examination under oath at any agreeable time as stated by my attorney in the letter attached as Exhibit "D," but Avatar never offered me or my attorney any dates to reschedule my examination.

After a hearing, the circuit court granted summary final judgment based on the homeowner's failure to attend the EUO. The court did not reach the issue of Avatar's claim of misrepresentation and fraud.[1]

### Standard of Review

"The standard of review for an order granting summary judgment is de novo." *State Farm Fla. Ins. Co. v. Lime Bay Condo., Inc.*, 187 So. 3d 932,

---

[1] Because the circuit court did not rule on the motion for summary judgment based on misrepresentation and fraud, we do not address the homeowner's arguments pertaining to that issue.

4

934 (Fla. 4th DCA 2016). "[A]n appellate court must examine the record in the light most favorable to the non-moving party." *Id.* (citation omitted).

Summary judgment is appropriate only where "there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000)). "[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact" and "the trial court must draw every possible inference in favor of the party against whom summary judgment is sought." *Albelo v. S. Bell,* 682 So. 2d 1126, 1129 (Fla. 4th DCA 1996) (citations omitted).

### *Summary judgment was inappropriate because a fact question existed regarding the willfulness of the homeowner's failure to attend the EUO*

The summary final judgment in this case was based on *Goldman v. State Farm Fire General Insurance Co.*, 660 So. 2d 300, 303 (Fla. 4th DCA 1995), where we held that an "insured's refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery under the policy."

We conclude that this case falls under an exception to *Goldman* which we described in *Haiman v. Federal Insurance Co.,* 798 So. 2d 811, 812 (Fla. 4th DCA 2001):

> A **total failure** to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law. **If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by the jury.**

(emphasis added) (citation omitted).

Here, in the light most favorable to the homeowner, the record does not demonstrate a "total failure" to comply with the EUO requirement of the policy. This case is controlled by *Himmel v. Avatar Property & Casualty Insurance Company,* 257 So. 3d 488 (Fla. 4th DCA 2018).

In *Himmel,* the insurer scheduled the insured's EUO and counsel for the insured "repeatedly requested to reschedule the EUO to a mutually

convenient date and time due to unavailability." *Id.* at 492. The insurer refused to reschedule the examination, insisting that the proofs of loss submitted by the insured were deficient. *Id.* at 490–91. The insured did not appear for the scheduled EUO and instead filed a declaratory judgment action "seeking a determination of whether Avatar could reasonably require Appellant, his wife, the public adjuster, and the various third parties to submit to an EUO at a time that was not mutually convenient." *Id.* at 491. The trial court granted Avatar's motion for summary judgment, finding that the insured failed to satisfy the post-loss contractual obligation of submitting to an EUO. *Id.*

On appeal, we held that entry of summary judgment was precluded because the insured "presented evidence showing that he cooperated to some degree and/or provided an explanation for his noncompliance which in turn created a question of fact as to whether there was a willful and material breach of the EUO provision, thus precluding entry of summary judgment." *Id.* at 492.

In this case, the homeowner's affidavit stated that the homeowner was unaware of the scheduled EUO and that he was out of the country attending to a family issue on the date set for the EUO. Before filing suit, the homeowner's second attorney tried to reschedule the EUO without success. As in *Himmel*, the homeowner presented evidence that he cooperated to some degree and provided an explanation for his nonattendance at the scheduled EUO, "which in turn created a question of fact as to whether there was a willful and material breach of the EUO provision, thus precluding entry of summary judgment." *Id.*

We reject Avatar's assertion that the homeowner's claims regarding his lack of notice of the EUO are "irrelevant to the issue in this appeal . . . because there is no dispute that Avatar properly advised [the homeowner's] legal counsel about the scheduled EUO and, as such, notice to his counsel is the same as notice to [the homeowner] directly." Imputation of knowledge to the homeowner is inappropriate—the core inquiry here is whether the homeowner "willfully" breached the insurance contract. Central to a finding of "willfulness" is the insured's actual knowledge of the time and place of the EUO. The failure of an attorney to notify the homeowner of an EUO may subject the attorney to sanctions, but those sanctions would fall short of the entry of summary judgment for the insurer on the insured's claim.

We reverse the summary final judgment and remand to the circuit court for further proceedings. We decline to address the homeowner's remaining

argument regarding the trial court's failure to strike Avatar's affidavit in support of summary judgment.

ARTAU, J., and SCHOSBERG FEUER, SAMANTHA, Associate Judge, concur.

*         *         *

***Not final until disposition of timely filed motion for rehearing.***